## LYTTLE v. PACIFIC MUT. LIFE INS. CO. OF CALIFORNIA.

### No. 6477.

Circuit Court of Appeals, Sixth Circuit.
June 7, 1934.

H. M. Roberts, of Cleveland, Ohio, for appellant.

A. M. Van Duzer, of Cleveland, Ohio (McKeehan, Merrick, Arter & Stewart, George W. Cottrell, and Blake Womer, all of Cleveland, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

ALLEN, Circuit Judge.

Appellant, widow of Daniel F. Lyttle, brought an action to recover upon a life insurance policy upon her husband's life, under which she is the beneficiary. Lyttle died on July 27, 1931, as the result of postoperative toxemia following an operation for gastro-enterostomy.

The defense was that Lyttle, in his application for the policy, had made false representations material to the risk, which had induced the company to issue the policy.

The District Court directed a verdict in favor of the defendant at the close of all the testimony. When a motion is made to direct a verdict, it is the duty of the trial court to take that view of the evidence most favorable to the party against whom it is desired that the verdict should be directed, and from that evidence and the inferences reasonably and justifiably to be drawn therefrom to determine whether under the law a verdict should be found as prayed for. Herman H. Hettler Lumber Co. v. Olds, 221 F. 612, at page 615 (C. C. A. 6); Begert v. Payne, 274 F. 784, 788 (C. C. A. 6).

Lyttle took the medical examination for the policy on June 6, 1931, and it was delivered to him on June 22, 1931.

Lyttle suffered an attack of indigestion on February 8, 1931, which was so acute that his family physician, Dr. Thornton, administered a hypodermic. On May 10, 1931, Dr. Thornton suggested that Lyttle have an X-ray taken "of what was in his stomach." Pursuant to this suggestion, Lyttle went to a hospital and there submitted himself to a fluoroscopic examination under the direction of an X-ray specialist, on May 11th and May 12th. Four X-ray plates taken in this examination were produced in evidence. The last plate was taken twenty-four hours after the test began. The plates disclosed obstructions at the entrance from the stomach into the duodenum, due probably to an old duodenal ulcer. The above facts are undisputed.

However, Lyttle had not been informed of the result of the fluoroscopic examination at the time he signed the application for the policy. Several medical experts testified upon the trial to the effect that a person may have ulcer of the stomach or intestinal tract without being aware of the nature or gravity of the ailment. Hence appellant urges that taking the view of the evidence most favorable to the plaintiff, it was not clearly proved that Lyttle's answers to the application were willfully false and fraudulently made, and that a jury question was thus presented under section 9391 of the General Code of Ohio. This section reads as follows:

"No answer to any interrogatory made by an applicant, in his or her application for a policy, shall bar the right to recover upon any policy issued thereon, or be used in evidence upon any trial to recover upon such policy, unless it be clearly proved that such answer is wilfully false, was fraudulently made, that it is material, and induced the company to issue the policy, and that but for such answer the policy would not have been issued; and, also that the agent or company had no knowledge of the falsity or fraud of such answer."

The undisputed testimony shows that the answers made by Lyttle induced the company to issue the policy, and that but for such answers it would not have been issued. When the policy was issued neither the medical examiner nor any agent of the company had any knowledge whatever of Lyttle's illness of February 18, 1931, of the X-ray examination, nor of the consultations with Dr. Thornton and Dr. West.

The controversy in the case arises over Lyttle's answers to questions put to him in

his application. Among these questions and answers were the following:

"5. Have you ever been treated for: * * * E. Gastric or Duodenal Ulcer, Indigestion, *Appendicitis*, Piles or Fistula?"

Answer: "E. Yes."

"* * * K. Have you ever had a surgical operation?"

Answer: "K. Yes."

In this same question 5, under the heading, "Give name, history, date and duration of each disease, symptom or operation," the following information is written: "Appendectomy in 1922. Tonsilectomy in 1925."

"6. Have you given full information about each disease, symptom or operation mentioned in question 5 above, which you have ever had or been treated for?"

Answer: "Yes."

"7. What injuries or illnesses, or treatments by or consultations with physicians or practitioners, have you had during the last seven years?"

Answer: "Tonsillectomy 1925 2 days. Cured."

The examiner testified that he himself put the questions to Lyttle, and himself filled in the answers upon the application. Lyttle told him of an operation for appendicitis undergone in 1922 and cured, and of a tonsillectomy undergone in 1925. The examiner thereupon underscored "Appendicitis" in question 5. Lyttle gave no other information as to consultations, illnesses or treatments. He himself signed that part of the application containing the answers above set forth.

It is urged that the answer "E" to question 5 raises an issue of fact for the jury, for Lyttle did say "Yes" to a question which, while specifying other diseases, asked him whether he had ever been treated for indigestion. However, the answer to question 6 was wholly false. Lyttle did not give the medical examiner full information about each disease or symptom mentioned in question 5 which he had ever had or been treated for. He gave no information about the severe attack in February of the same year, namely 1931.

While the answer to question 7 was partially true, for it mentioned the tonsillectomy, it concealed illnesses, treatments by and consultations with physicians during the few months preceding the application. Lyttle could not have forgotten that in February he had suffered an attack of indigestion so severe that a hypodermic was administered, nor that at the suggestion of his family physician he had subjected himself to a long and complicated X-ray examination, in the course of which he had "consulted" another physician, namely, Dr. West.

Because of their concealment of material facts, together with the statements made, the answers to questions 5, 6 and 7, read together, constitute a representation by Lyttle that he had had no illness, no treatment by or consultation with a physician or practitioner since 1925. This whole representation was false. Being falsely made with respect to a material matter, it will be presumed to have been made willfully and with intent to deceive. Mutual Life Ins. Co. of New York v. Hurni Packing Co., 260 F. 641 (C. C. A. 8); Raives v. Raives, 54 F.(2d) 267 (C. C. A. 2); Claflin v. Commonwealth Ins. Co., 110 U. S. 81, 3 S. Ct. 507, 28 L. Ed. 76.

Under the facts above disclosed, the trial court was compelled to allow the motion for directed verdict. The representation that a physician had not been consulted since 1925, whether made in so many words or made by concealment of the facts, was as a matter of law material. Mutual Life Ins. Co. of New York v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202; Haddad v. New York Life Ins. Co., 42 F.(2d) 651 (C. C. A. 6); New York Life Ins. Co. v. Cohen, 57 F.(2d) 494 (C. C. A. 6); Fountain & Herrington, Inc., v. Mutual Life Ins. Co. of New York, 55 F.(2d) 120, 123 (C. C. A. 4).

The judgment of the district court is affirmed.