Lora J. FERRAR, Plaintiff,

v.

FEDERAL KEMPER LIFE ASSURANCE COMPANY, Defendant.

Case No. C–3–00–127.

United States District Court, S.D. Ohio, Western Division.

March 18, 2002.

---

942

Paul Roderer, Dayton, OH, for Plaintiff.

Craig Carlson, Columbus, OH, Marc Pera, Dayton, OH, for Defendant.

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 10); CONFERENCE CALL SET TO ESTABLISH TRIAL DATE AND OTHER DATES

RICE, Chief Judge.

This litigation stems from the death of Jason C. Ferrar ("decedent"), the insured under a life insurance policy issued by Defendant Federal Kemper Life Assurance Company ("Federal Kemper"). After decedent's death, his wife and beneficiary, Plaintiff Lora J. Ferrar ("Ferrar"), sought recovery of benefits under the Federal Kemper policy. Defendant refused to pay benefits, however, citing the existence of misrepresentations in decedent's life insurance application. As a result of Defendant's refusal to pay, Ferrar commenced the present action in state court, alleging a breach of the insurance contract. Defendant removed the action to this judicial forum on the basis of diversity of citizenship. Having already vacated an earlier decision and entry granting summary judgment to Defendant (*see* Doc. # 16),[1]

1. As noted in the Court's Decision and Entry Vacating Decision and Entry (Doc. # 11) Sustaining Defendant's *Unopposed* Motion for Summary Judgment (Doc. # 16), the Court originally sustained Defendant's Motion for Summary Judgment (Doc. # 10) prematurely, being unaware at that time of a contemporaneous motion filed by Ferrar in which she

the Court now considers Defendant's Motion (Doc. # 10) anew, as opposed by Ferrar's Memorandum in Response (Doc. # 18).

## I.  Factual Background [2]

Ferrar and decedent were married in June of 1995. (Ferrar Aff., attached as Ex. A to Doc. # 18, ¶ 3.) In April of 1998, the couple decided to purchase individual life insurance policies. (*Id.*) They contacted Fred Balser, an agent for Federal Kemper, to arrange the purchase, and met with him in June of 1998. (*Id.* ¶¶ 3, 4.) A copy of decedent's policy, and application therefor, is attached to Ferrar's Complaint (attached to Doc. # 1) as Exhibit A, and indicates that Ferrar was named as decedent's beneficiary. (*See also* Compl. ¶ 4.) Of particular relevance to this case are two "yes/no" questions contained on page 2 of the application:

> Question No. 8: Have you ever received or have you ever been advised to seek counseling for alcohol or drug abuse? Question No. 11: In the past five years have you been hospitalized or consulted a physician?

In addition to these questions appearing on the face of the application, Balser states that he, per his custom, verbally posed these questions to the Ferrars. (Balser Aff. ¶ 7.) Defendant contends that decedent answered "no" to both of these questions (Balser Aff., attached as Ex. G to Doc. # 10, ¶ 8), and that such answers are factually false. (Doc. # 10 at 4 & Exs. B–E.) Specifically, Defendant contends that the evidence shows that within the preceding five years decedent had been treated on multiple occasions for alcohol abuse, including a two-month treatment at Grandview Hospital in 1994, and twice for other medical conditions, including the surgical removal of a cyst in 1996.[3]

The policy provided that Defendant would not contest the policy's validity after two years from the date of issuance, which was July 9, 1998. (Doc. # 1 at Ex. A.) Decedent died on January 14, 1999. (Ferrar Aff. ¶ 2.) On the basis of the purported misrepresentations, and because decedent died within the two-year grace period, Defendant refused to disburse benefits to Ferrar. (Compl. ¶ 6.) Defendant argues that it rightfully denied benefits, stating that had decedent answered the questions "truthfully" in the first instance, it never would have issued the policy. (Patterson Aff., attached as Ex. F to Doc. # 10, ¶ 7.)

Ferrar attempts to draw into question the authenticity of her husband's application, as such appears in the record before the Court. At the June meeting with Balser, decedent completed a preliminary application by hand. (Ferrar Aff. ¶ 4.) This application included questions identical to

---

sought additional time to respond to Defendant's Motion (*see* Doc. # 14). In the same entry (Doc. # 16), the Court sustained Ferrar's motion for such extension.

2.  For purposes of ruling on the Defendant's Motion for Summary Judgment, the Court will construe the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the Plaintiff, who is the non-moving party.

3.  Exhibits B–E of Defendant's Motion are purported copies of medical records tending to show a medical history inclusive of medical treatment within the five years preceding the date on which decedent completed his insurance application. Procedurally, the attachment of the Exhibits is defective because they are not accompanied by an affidavit corroborating their authenticity. As such, they would not be admissible into evidence, and, ergo, cannot be accepted by the Court in support of a motion for summary judgment. *See* Fed. R.Civ.P. 56(e). However, given that they are not material to the outcome of this Motion, and because they could easily be authenticated if need be, the Court will assume the truth of the statements contained in Defendant's Exhibits for the purpose of this ruling.

those which appear on page 2 of the application attached to the Complaint. (*Id.*) On the copy of the application attached to the Complaint, the answers to the "yes/no" questions enumerated on page 2, including questions 8 and 11, were completed by the insertion of a *typewritten* "X" in the appropriate response ("yes/no") column. The Ferrars themselves did not personally type their responses. (*Id.*) Furthermore, the typed responses that were submitted as part of *Ferrar's* own application for Federal Kemper life insurance (*see* Doc. # 18 at Ex. D) contained at least two inconsistencies with the responses she personally provided by hand at the June meeting with Balser. (Ferrar Aff. ¶ 4.) Specifically, in response to questions 4 and 11 on page 2, she personally supplied "no" answers, yet the copy of her typed application indicates "yes" responses. (*Id.*) Additionally, other information was attached to her official application which she had not personally provided when she completed the application in the presence of Balser. (*Id.* ¶ 7.)

Nevertheless, with respect to her husband's application, Ferrar acknowledges that she is without knowledge of the answers he provided. (*Id.* ¶ 5.) She denies, however, that Balser ever posed verbally the questions enumerated on page 2 to her or decedent. (*Id.*)

With respect the veracity of decedent's alleged answers to questions 8 and 11, Ferrar submits that her husband "did not believe he was an alcoholic, and he did not believe that he had ever been treated specifically for alcoholism."[4] (*Id.* ¶ 6.) The couple had sought pre-marriage and marriage counseling, but while the issue of decedent's drinking was a topic of discussion, it was not the sole or specific focus of the sessions. (*Id.;* Pohly Aff., attached as Ex. C to Doc. # 18, ¶ 5.) Further, though she does not deny that decedent sought

medical care on two occasions within the five-year period of time preceding the date he applied for life insurance, she downplays the significance of those treatments. (Ferrar Aff. ¶ 7.) She does not address at any length decedent's 1994 alcohol counseling at Grandview Hospital.

Defendant now moves for summary judgment on the ground that decedent's false answers on his application for insurance void his policy, such that Ferrar, as decedent's named beneficiary, is not entitled to benefits.

## II. *Standards Governing Motions for Summary Judgment*

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991)(The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden

---

**4.** As the Court will discuss below, this is not     admissible evidence.

then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law, Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir. 1994)("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), cert. denied, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Sys., Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings,

depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

### III. *Analysis*

As a starting point, it is helpful to reflect upon what Ferrar does not dispute. *First,* she does not dispute that decedent sought a physician's care on two occasions within the five years preceding the date on which he applied for life insurance. *Second,* she does not dispute in her Affidavit that decedent was admitted for treatment for alcoholism at Grandview Hospital on September 12, 1994. (*See* Doc. # 10 at Ex. B.) *Third,* she does not dispute Defendant's contention that the substance of decedent's alleged responses to both question 8 and 11 are factually false.

▆ With these observations of fact in mind, the Court will examine the law in Ohio concerning the ramifications of supplying false statements on an application for life · insurance.[5] Ohio Rev.Code § 3911.06 states:

No answer to any interrogatory made by an applicant in his application for a policy shall bar the right to recover upon any policy issued thereon, or be used in evidence at any trial to recover upon such policy, unless it is clearly proved that such answer is willfully false, that it was fraudulently made, that it is material, and that it induced the company to issue the policy, that but for such answer the policy would not have been issued, and that the agent or company had no knowledge of the falsity or fraud of such answer.

The Ohio Supreme Court has construed this statute to require a showing of the following elements before an insurer may deny benefits: 1) the applicant willfully gave a false answer; 2) such an answer was given for a fraudulent purpose; 3) but for such answer the policy would not have been issued; 4) neither the insurer nor its agent had any knowledge of the falsity of such answer. *See Jenkins v. Metropolitan Life Ins. Co.,* 171 Ohio St. 557, 173 N.E.2d 122, 125 (1961). Equally important, the insurer must support its showings with clear and convincing evidence. *Id.*

In its prior Decision and Entry on this matter (Doc. # 11), now vacated (*see* Doc. # 16), the Court found that decedent's false answer to question 8 with respect to his counseling for alcoholism was made willfully and fraudulently.[6] (Doc. # 11 at 9.) It drew this inference in the "[absence of] any evidence from Plaintiff suggesting [decedent] somehow made an honest mistake" when completing his responses. (*Id.* (citing *Jenkins, supra,* at 126).) It also found that had decedent answered the questions truthfully, his application for insurance would have been denied. (*Id.*) Finally, it found that neither Federal Kemper nor Balser had any prior knowledge of the falsity of decedent's answers. (*Id.* at 10.)

In her Response (Doc. # 18), Ferrar suggests that Defendant has failed to satisfy the *Jenkins* test on two points: its required showing of willful falsity, and its required showing that but for the responses given, the policy would not have been issued. The Court will address the former argument first, but only with respect to decedent's answer to question 8. The

---

5. In this case, before the Court on the basis of diversity jurisdiction, Ohio substantive law applies. (*See* Doc. # 11 at 7, n. 3.)

6. Finding it unnecessary to do so, the Court did not consider the effect of the false answer

given with respect to decedent's having received other medical treatment in the five years preceding his application for life insurance (question 11). (Doc. # 11 at 8, n. 5.)

Court need not consider the effect of decedent's answer to question 11 because, as Ferrar notes, Defendant has abandoned any attempt to demonstrate that decedent's failure to mention his recent medical treatments was a material misrepresentation. The Court agrees with Ferrar that if Defendant were basing its argument solely on decedent's act of giving a false answer on question 11, the argument would fail for a failure to show clearly and convincingly that the misrepresentation was material. As Ferrar notes at page 4 of her Response, Defendant's defense turns on the materiality of decedent's false response to question 8.

Turning to decedent's answer to question 8, then, it is undisputed that decedent sought treatment for alcohol dependency at Grandview Hospital beginning on September 12, 1994, and continuing until his final discharge on November 9, 1994. Ferrar argues that her late husband did not believe he was an alcoholic. (Ferrar Aff. ¶ 6; Doc. # 18 at 2.) The Ferrars' relationship counselor, Carol R. Pohly, LPCC, also states that she does not believe decedent considered himself to have an alcohol dependency.[7] (Pohly Aff. ¶ 6.) Although not altogether irrelevant to Ferrar's case, on this particular point these sentiments are irrelevant. Question 8 asks whether decedent had ever sought or had been advised to seek counseling "for alcohol ... abuse." It does not ask whether decedent believed he was an alcoholic. Nor does it ask whether decedent had ever sought counseling "for being an alcoholic." There is no ambiguity to the question, nor is there any ambiguity to why decedent was admitted to Grandview Hospital in September of 1994. Plainly, in light of his treatment at Grandview, whether or not he considered himself an alcoholic, there

could have been no mistaking that he had been counseled for alcohol abuse, be it actual or perceived. As such, his alleged answer is factually (objectively) false as to the question actually posed.

■ There was other counseling too, but of a different nature. Ferrar and decedent received relationship (or marriage) counseling from Pohly from June, 1995, through May, 1997. Ferrar makes much of the fact that the extended marriage counseling she and her late husband received was just that, and not alcohol counseling per se. Indeed, Pohly states that she counseled the couple on "numerous issues," and that "Mr. Ferrar did not consult me specifically for alcohol" problems. (Pohly Aff. ¶¶ 3, 5.) Defendant counters in its Reply (Doc. # 20) that Pohly's statement on this matter is contradicted by her own records which indicate that Ferrar encouraged decedent to go to Pohly to discuss certain "indulgences." (Doc. # 10 at Ex. C.) On this point, the Court does not find Defendant's argument persuasive. The fact that decedent discussed his alcohol consumption with Pohly is consistent with Pohly's and Ferrar's claims that the couple discussed "numerous issues" with her. Moreover, this fact does not transform the "relationship counseling" into "alcohol counseling" anymore than a discussion concerning a television watching habit or who does the laundry transforms it into "television watching counseling" or "laundry detail counseling."

Given the evidence adduced by Ferrar (and, for that matter, Defendant) that decedent did not consider himself an alcoholic, and given the fact that the nature of his counseling with Pohly was nominally characterized as "relationship counseling," the Court finds that there exists a genuine

---

7. If Pohly were certified as an expert, her opinions could be admitted pursuant to Fed. R.Civ.P. 702. For purposes of ruling on summary judgment, the Court shall assume that Pohly could be certified.

issue of material fact as to whether it could be said that decedent's counseling sessions with Pohly provide a basis for alleging that he gave an objectively false answer to question 8. Even if it could, there exists a second genuine issue of material fact, that being whether decedent's counseling sessions with Pohly provide a basis for alleging that his response to question 8 was subjectively false, or "willful." The end result of these findings is that the Pohly counseling must drop out of the Court's summary judgment analysis, leaving the success of Defendant's Motion hinging on the effect of decedent's answer to question 8 in light of his Grandview counseling alone.

█ As noted, there can be no doubt that decedent's answer to question 8, in light of his Grandview counseling, was objectively false. Two questions remain on this point. The first is whether the "no" answer to question 8 was the actual answer provided by decedent, and the second is whether the falsity was "willful." As to the first, by raising the fact that two questions on her own application were answered in a manner not in accord with the answers she had personally supplied to Balser at their June meeting (*see* Ferrar Aff. ¶ 4), Ferrar asks the Court to draw an inference that decedent's application might also have been submitted with incorrect responses. However, if decedent did not indicate "no" to question 8 and/or 11, then he must have indicated "yes." Whether "yes" responses would have made a material difference in Defendant's decision to issue the life insurance policy is already a question which Defendants must address under the third element of the *Jenkins* test, to wit: whether, but for the answer given, the policy would not have been is-

sued. As such, even if the Court were to find that a genuine issue of fact exists as to the answers actually provided by decedent (to questions 8 and 11), that genuine issue would not be *material* under § 3911.06, because Defendant already has the burden of showing that a "yes" answer would have made a difference in its decision to issue the policy.[8]

The second question concerning the falsity element is whether the false answer was given "willfully." The statute does not provide its own definition of the term "willful." Black's Law Dictionary (5th ed.1979) gives various definitions, including "[i]ntending the result which actually comes to pass; designed; intentional; not accidental or involuntary." It also suggests that "[a]n act or omission is 'willfully' done, if done voluntarily and intentionally and with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done." Construing the predecessor to § 3911.06, the Sixth Circuit has stated that where a statement is "falsely made with respect to a material matter, it will be presumed to have been made willfully and with intent to deceive." *Lyttle v. Pacific Mut. Life Ins. Co.*, 72 F.2d 140, 142 (6th Cir.1934) (citations omitted). Therein, having been asked on the application whether he had provided "full information" about his medical history, the insurance applicant responded "yes." The court found, however, that he had provided incomplete information, rendering his "yes" answer false. Absent any explanation as to that falsity, it was presumed willfully and fraudulently given. *Id.*

█ As already noted, the fact that decedent may not have considered himself

---

8. In other words, even if the decedent's act of supplying a "no" answer where he knew he should have provided a "yes" answer was done "willfully," *Jenkins* requires the insurer to show that the correct answer would have prevented the issuance of the policy; a showing of willful falsity by itself does not entitle Defendant to judgment as a matter of law.

an alcoholic is wholly irrelevant to whether he knew he had ever received counseling for alcohol abuse *at Grandview.* Furthermore, Ferrar acknowledges that decedent entered the program at Grandview "at the request of his parents and to please his parents" (Doc. # 18 at 4–5), arguably giving rise to a finding that he was aware of having been "advised" to seek counseling, which would also require a "yes" answer to question 8. The only piece of evidence which mitigates a finding that decedent willfully provided a false answer is Ferrar's Affidavit statement that decedent "did not believe he had ever been treated specifically for alcoholism." (Ferrar Aff. ¶ 6.) This, however, is not admissible evidence. If Ferrar bases her statement on something decedent said to her, it is inadmissible hearsay. If she bases her statement on her own belief of what decedent believed, it is inadmissible as incompetent evidence. Finally, even if the statement were assumed true, the Court rejects Ferrar's game of semantics. Regardless of how decedent may have characterized the counseling he received at Grandview, it, as compared to the counseling with Pohly, served the single purpose of addressing decedent's drinking habit and unambiguously comes within the ambit of question 8.

■ Defendant's burden is to show willfulness by clear and convincing evidence. The Ohio Supreme Court has held that clear and convincing evidence "is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118, 123 (1954). "It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *Id.* (citation omitted). Ferrar makes much of the fact that the extended marriage counseling she and her late husband received was just that, and not alcohol counseling. As noted, the Court agrees that there exists a genuine issue of material fact on this point. The fact is, though, that decedent also received counseling at Grandview for two months. Ferrar does not even address this fact in her Affidavit. The facts in this case are very similar to those in *Lyttle,* wherein the insurance applicant flat out lied in an answer regarding his medical history. In contrast to the explanation provided for why the Pohly counseling may not have prompted a "yes" answer to question 8, Ferrar has proffered no explanation for why decedent, in light of his Grandview counseling, gave the "no" answer that he allegedly did. Accordingly, the Court presumes that his answer was willfully false and finds that reasonable minds would unanimously conclude that the evidence clearly and convincingly demonstrates this. *See Jenkins,* 173 N.E.2d at 126; *see also Sambles v. Metropolitan Life Ins. Co.,* 158 Ohio St. 233, 108 N.E.2d 321, 324 (1952) (holding that where a life insurance applicant makes a false statement regarding his rather obvious medical history and no evidence is adduced by the beneficiary/plaintiff to explain the falsity, it is "unreasonable" to infer that the falsity was not willfully and fraudulently stated).

■ The remaining question is whether providing a different answer to question 8 (i.e., a "yes" answer) would have defeated decedent's application for insurance. Federal Kemper's Chief Underwriter, Lynn Patterson, states that had decedent disclosed in his application what Defendant now knows of him, Defendant would not have issued the insurance policy. (Patterson Aff. ¶ 8.) She states two reasons for this conclusion: *first,* decedent was not an "acceptable risk" based on factors Defendant considers relevant; *second,* the very fact that he failed to admit to past treatment is reason to decline the application. (*Id.*)

■ The second rationale does not present an issue for consideration under a § 3911.06 analysis. Under § 3911.06, and *Jenkins,* Defendant must show that it would have denied the application had it been given different information. Had it actually discovered the falsity of decedent's representation prior to issuing coverage, that fact would have allowed them to deny coverage in the first instance; there would be no need to invoke § 3911.06. In other words, denying an application on the basis of *the act* of misrepresenting a fact is not the concern of § 3911.06, as § 3911.06 applies where the misrepresentation is only discovered after a policy has been issued, where it is then concerned with the materiality of the misrepresented fact, not the morality of the act of misrepresentation itself.

As for whether decedent would have been an acceptable risk had all relevant facts been in the open, Ferrar disputes Patterson's contention that decedent would not have been. (*See* Doc. # 18 at 4.) In her Response, Ferrar merely questions the veracity of Patterson's statement, but adduces no evidence to refute Patterson's sworn statement. Given her position at Federal Kemper, the Court accepts Patterson's statement as prima facie evidence of how Defendant would have conducted itself, and Ferrar's unsupported argument opposing it is not sufficient Rule 56(c) rebuttal evidence. Still and all, Ferrar is saved in this instance by the fact that the factual landscape has changed since the Court first ruled on Defendant's Motion, and in the current landscape, Defendant has failed to meet its initial burden as the party moving for summary judgment.

In its original decision and entry on this Motion, the Court concluded that Patterson's statements were dispositive on the issue of materiality. (Doc. # 11 at 9.) However, as discussed above, the Court finds that when the Pohly counseling is properly characterized, the fact that decedent attended such arguably provides no basis for finding that his response to question 8 was false. The present shortcoming with Defendant's argument is that Patterson's statements as to its risk-taking policies are based on her assessment of what Defendant likely would have done had it known about *both* the Grandview counseling *and* the Pohly counseling. If such facts were *still* the proper basis for making its determination, the Court would again find Patterson's unrefuted statements to be dispositive. Arguably, however, question 8 did not require decedent to divulge his counseling with Pohly. The only counseling that decedent unquestionably was required to reveal was his 1994 counseling at Grandview. Thus, the question of whether Federal Kemper would have acted differently had decedent answered "yes" to question 8 cannot be conclusively answered by reference to Patterson's Affidavit. It may be that upon a follow-up investigation to his "yes" answer, the 1994 Grandview counseling sessions by themselves would have defeated decedent's application, but the Court is unable to make such a determination on the record before it.[9] This is

---

9. Patterson makes the following statement:

*Federal Kemper's underwriting policies* prohibit issuing life insurance to any chemical-dependent person who has not been sober for a period of at least one year *and* has met other criteria demonstrating recovery. Such other factors considered include, but are not limited to, past history of relapses, types of treatment, and participation in after-care or self-help programs. Jason Ferrar did not sat-

isfy these criteria and was not an acceptable risk under Federal Kemper's underwriting policies.

(Patterson Aff. ¶ 8. (emphasis in original).) This statement was made in light of the discovery not only of his Grandview treatment, but also of his counseling with Pohly. Construing the facts and the benefit of all reasonable inferences in favor of Ferrar, the nonmoving party, the Court cannot conclude on

a genuine issue of material fact for the jury to decide.

■ As an alternative argument, Ferrar argues that § 3911.06 should be construed in such a way as to require a showing by Defendant that the cause of decedent's death was related to the very condition misrepresented on the application. (Doc. # 18 at 5.) In other words, Defendant should be required to show that decedent's death was alcohol related. In proffering this argument, she relies on a decision issued by the Second District Court of Appeals of Ohio in which it was held that a misrepresentation on a *medical insurance* application, concerning the applicant's medical history, must concern the cause of the current medical condition for which a claim is being made in order for the insurer to deny coverage. *Thompson v. New York Life Ins. Co.*, 1989 WL 148033, 1989 Ohio App. LEXIS 4554 (Ohio Ct.App. Dec. 4, 1989). *Thompson,* however, concerned a separate provision of the Revised Code, § 3923.14, relating to medical insurance, not life insurance.[10] While the language of the two statutes is similar, the Court need not consider analogizing § 3911.06 to § 3923.14, because the law of the former, at issue herein, is firmly established: if a false answer on a life insurance application is given willfully, fraudulently, and is material to the issuance of the policy, it is immaterial if decedent's cause of death is unrelated to the subject matter of the false answer given. *See Estate of Barnhart v. Acceleration Life Ins. Co.*, 1994 WL 247056 (Ohio Ct. App. June 8, 1994); *May v. State Farm*

*Ins. Co.*, 1991 WL 81925 (1991); *Evans v. Prudential Ins. Co. of America,* 1982 WL 5129 (Ohio App. Dec. 29, 1982).

## IV.  *Conclusion*

The Court finds that there is a genuine issue of fact as to whether the Pohly counseling constitutes, from an objective viewpoint, "alcohol counseling," as that term is used in question 8 of the application for Federal Kemper life insurance.  Furthermore, even if the Pohly counseling were found to be "alcohol counseling," the Court finds that there is a genuine issue of fact as to whether decedent would have subjectively considered it to constitute as much, a factor necessary to consider before finding that his answer to question 8 was *"willfully* false."  Removing the Pohly counseling from the calculus, the Court further finds that a third genuine issue of fact exists, that being whether Defendant would have denied issuing a policy to decedent had he answered "yes" to question 8, while revealing only his 1994 counseling at Grandview Hospital.

The first and second issues go together, and concern the "willfully false" element of the *Jenkins* test.  They also have the potential to add to the weight of Defendant's materiality argument (if decedent's counseling with Pohly is found to have been a necessary disclosure under question 8). The third issue can stand alone, and concerns solely the "materiality" element of the *Jenkins test.*  For the Court's present purposes, all of these issues are *material.* At trial, Defendant may address all of the

---

the basis of this affidavit statement that Defendant's position would be the same were only the Grandview treatment to be considered.

**10.**  That section states in pertinent part:

The falsity of any statement in the application for any policy of sickness and accident insurance shall not bar the right to recovery

thereunder, or be used in evidence at any trial to recover upon such policy, unless it is clearly proved that such false statement is willfully false, that it was fraudulently made, that it materially affects either the acceptance of the risk or the hazard assumed by the insurer, that it induced the insurer to issue the policy, and that but for such false statement the policy would not have been issued.

issues in order to bolster its argument that decedent's answer to question 8 was willfully false and material to its decision to issue him a policy, or it may address issue three alone. For the moment, for the reasons stated, the Court finds Defendant's Motion for Summary Judgment not well taken, and it is hereby OVER-RULED.

Counsel of Record will take note that a telephone conference call will be had, beginning at 5:15 p.m., on Thursday, March 28, 2002, for the purpose of setting a trial date and other dates leading to a resolution of this case.