**Angela M. SPENCER, Plaintiff,**

v.

**MINNESOTA LIFE INSURANCE CO., Defendant.**

No. 3:02cv573.

United States District Court,
S.D. Ohio,
Western Division.

July 6, 2007.

James Edward Arnold, Clark Perdue Roberts & Scott, Columbus, OH, for Plaintiff.

Leena Soni, Chicago, IL, Catherine A T Nelson, William Herbert Howard, Cozen & O'Connor, Philadelphia, PA, for Defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW; JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF; TERMINATION ENTRY

WALTER HERBERT RICE, District Judge.

Plaintiff Angela M. Spencer ("Plaintiff" or "Ms. Spencer") seeks payment of a $104,424.62 benefit on a mortgage life insurance policy issued by Defendant Minnesota Life Insurance Co. ("Defendant" or "Minnesota Life") to James Spencer ("Mr.Spencer"), deceased. Defendant denies any obligation to pay benefits on the policy, insisting that it was induced to issue the policy by Mr. Spencer's willful and fraudulent misrepresentations on the insurance application. Based upon the evidence presented at a trial held on April 6, 2004, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. On March 15, 2001, Angela and James Spencer applied for Mortgage Life Insurance with Defendant by filling out an application for insurance.

2. The application for insurance had been included in a solicitation that

the Spencers received in the mail from Wells Fargo, a third-party.

3. In response to the question, "During the past three years, have you for any reason consulted a physician or other health care provider or been hospitalized?" Mr. Spencer responded "no" on his application for the insurance at issue.

4. Defendant issued a certificate of insurance to Angela and James Spencer on March 27, 2001, under Mortgage Life Insurance Policy No. 0440636.

5. On July 18, 2001, Mr. Spencer died in an automobile accident.

6. In 1993, Mr. Spencer was diagnosed with bipolar disorder.

7. In 1994, Mr. Spencer was hospitalized due to depression.

8. Mr. Spencer had consulted a physician or other health care provider within the three years preceding his application for insurance.

9. Mr. Spencer had consulted a physician or health care practitioner for refills of his bipolar medication within the three years preceding the date of his application for insurance.

10. Mr. Spencer's answer of "no" to the question regarding medical treatment in the three years preceding his application for insurance was false.

11. If Defendant had been aware of Mr. Spencer's medical condition and treatment, it would not have issued the coverage at issue herein.

12. Defendant had no knowledge of Mr. Spencer's true medical condition when it issued the policy.

## OPINION

 This case turns on the interpretation and application of Ohio Revised Code § 3911.06. That section states, in its entirety:

> No answer to any interrogatory made by an applicant in his application for a policy shall bar the right to recover upon any policy issued thereon, or be used in evidence at any trial to recover upon such policy, unless it is clearly proved that such answer is willfully false, that it was fraudulently made, that it is material, and that it induced the company to issue the policy, that but for such answer the policy would not have been issued, and that the agent or company had no knowledge of the falsity or fraud of such answer.

Although this section appears to set forth six elements, some of the elements necessarily overlap. Accordingly, the Supreme Court of Ohio has declared that

> an insurer can satisfy the requirements of Section 3911.06, so as to establish an answer to an interrogatory by an applicant as a bar to recovery upon a policy, by clearly proving that
>
> (1) the applicant willfully gave a false answer
>
> (2) such answer was made fraudulently
>
> (3) but for such answer the policy would not have been issued and
>
> (4) neither the insurer nor its agent had any knowledge of the falsity of such answer.

*Jenkins v. Metropolitan Life Ins. Co.*, 171 Ohio St. 557, 173 N.E.2d 122, 125 (1961). These showings must be supported by clear and convincing evidence. *Id.*

There is not serious dispute as to the latter two elements. Specifically, Plaintiff agreed during closing arguments at trial that the sole issue for the Court is the intent of Mr. Spencer in filling out the application for insurance.

Plaintiff stresses that, under § 3911.06, Defendant has the burden of proof by

clear and convincing evidence. Although that is the burden imposed by § 3911.06 generally, Courts interpreting the statute have recognized that false answers given by an applicant for insurance create a presumption beneficial to the insurance company. Specifically, construing the predecessor to § 3911.06, the Sixth Circuit stated that where a statement is "falsely made with respect to a material matter, it will be presumed to have been made willfully and with intent to deceive," i.e., that the statement was fraudulent under the statute. *Lyttle v. Pacific Mut. Life Ins. Co.*, 72 F.2d 140, 142 (6th Cir. 1934) (citations omitted). The Ohio Supreme Court's interpretation of the current § 3911.06 comports with the Sixth Circuit's interpretation in *Lyttle*. In *Jenkins v. Metropolitan Life Ins. Co., supra*, the Ohio Supreme Court reviewed a similar case, and concluded that, absent evidence that the insured had made an honest mistake in answering the question at issue on the application for insurance, a presumption operated in favor of the insurer that the insured's answer was willfully false and fraudulently made. *Id.* at 126. Specifically, it held that

> where it has been established that in an application for a policy of life insurance an insured has given an untrue negative answer to a question whether he had consulted a physician within a specified number of years and such insured or someone else claiming under the policy contends that the insurer has not clearly proved that such answer was willfully false and fraudulently made because the consultation was not for or not known by the insured to be for any serious ailment or condition, the one claiming under the policy has the burden of going forward with evidence tending to prove (if not the burden of proving) that such consultation was not for or not known by the insured to be for any serious ailment or condition.

*Id.* (citations omitted). *See also Sambles v. Metropolitan Life Ins. Co.*, 158 Ohio St. 233, 108 N.E.2d 321 (1952) (false answer on insurance application in response to question regarding recent medical treatment is, as a matter of law, willfully false and fraudulently made).

Recent decisions interpreting § 3911.06 agree that the insurer's burden of proof extends only to whether the insured knowingly provided a false answer: "As a result [of the Ohio Supreme Court's decision in *Sambles*], an insurer, when seeking relief under 3911.06 is not required to prove fraudulent *intent*. To the contrary, all the company has to do is simply show that the applicant knowingly provided a false answer." *Blakely v. Security Dollar Bank*, 2001 WL 848581 at *3 (Ohio App. 11 Dist.2001) (emphasis in original) (citations omitted). *See also, Ferrar v. Federal Kemper Life Assur. Co.*, 198 F.Supp.2d 940, 949 (S.D.Ohio 2002) (presuming, in absence of evidence explaining a false answer on an application for insurance, that said false answer was willfully false).

The Court believes that Defendant easily meets its burden of showing that Mr. Spencer's answer to Question # 1 on the application for insurance was willfully false. As noted *supra*, the Court has already found that Mr. Spencer consulted a doctor and voluntarily obtained medication to treat his bipolar disorder.[1] Accordingly, in addressing the extent to which his answer to Question # 1 was willful and fraudulent, the presumption oper-

---

1. *See also infra,* concluding that Mr. Spencer believed that his bipolar disorder was a serious condition.

ates in favor of Minnesota Life, and the burden shifts to Plaintiff to come forward with evidence explaining the falsity.

At trial, Plaintiff offered a number of reasons why it would be incorrect to conclude that Mr. Spencer acted willfully and fraudulently in answering "no" to Question # 1. *First*, she suggests that someone who intends to defraud an insurance company does not do so by responding to a solicitation—as the Spencers did. Instead, Plaintiff suggests, such a person actively seeks insurance. *Second*, Plaintiff asserts that someone interested in willfully defrauding an insurance company would not do so by procuring mortgage life insurance, which pays money to the insured's mortgage company, and not to the insured himself. *Third*, and relatedly, Plaintiff suggests that it does not make sense that Mr. Spencer sought to defraud Defendant because the potential pay-out of the policy in question herein was relatively small ($104,810, and decreasing with each monthly mortgage payment made by the Spencers) compared to other types of life insurance.

Despite any underlying logical appeal that these assertions may possess, they simply do not amount to a satisfactory explanation for Mr. Spencer's having answered "no" to Question # 1 on the insurance application. As noted *supra*, Plaintiff could avoid the presumption that Mr. Spencer's untruthful response to Question # 1 was willful and fraudulent by pointing to evidence that said false answer was an honest mistake, but there simply is no evidence of that fact.[2]

Further, according to the Ohio Supreme Court, Plaintiff could rebut the presumption by producing evidence that Mr. Spencer's treatment was not for a condition known by him to be a serious one. *Jenkins, supra.*[3] To this end, Plaintiff first argues that Mr. Spencer did not have what is commonly recognized as a terminal illness. This is a non sequitur, though. The Ohio Supreme Court in *Jenkins* discussed a condition not known by the applicant to be serious, as opposed to a condition not known to be terminal.[4] Further, the evidence elicited at trial supports the proposition that Mr. Spencer did, in fact, believe that his bipolar condition was serious. Specifically, after being diagnosed with a bipolar disorder in 1993, his medical records indicate that he saw a psychologist and that he obtained prescriptions for Zoloft, which is an anti-depressant, and Depakote, which is an anti-convulsant, typically prescribed to treat manic episodes associated with bipolar disorder. In fact, the medical records show that Mr.

2. Plaintiff testified at trial that when she read the application, she read the questions in reverse order, thereby forming the belief that Question # 1 required a "yes" answer only if the applicant had consulted a physician or health care provider for any of the specific medical conditions identified in Question # 2. (Question # 2 stated: "Have you ever been treated for or advised that you had any of the following: heart, lung, nervous, kidney or liver disorder; high blood pressure; drug abuse including alcohol; cancer or tumor; diabetes?") However, no admissible evidence was offered to support a finding that Mr. Spencer made the same mistake.

3. The Court is skeptical as to the extent to which this consideration should apply in the case *sub judice*. Whereas it is easy to imagine a differently worded insurance application that inquired as to an applicant's recent treatment for "serious conditions," the application at issue in this litigation was explicit in inquiring as to the applicant's recent treatment "for any reason." Nonetheless, the Court will consider any such evidence.

4. And, as suggested *supra*, a strict reading of the application at issue herein does not even distinguish between serious and non-serious conditions. Instead, it asks whether the applicant has, in the preceding three years, consulted a physician or health care provider "for any reason."

Spencer requested a refill of his Zoloft prescription in January of 2001, only two months before filling out the application for insurance.[5] Additionally, the records show that Mr. Spencer visited his doctor three times within the three-year period in order to have blood drawn for blood testing. Finally, other notations in the records demonstrate that Mr. Spencer requested refills for his bipolar medications at various other times, either via a pharmacist or directly from the doctor's office. Accordingly, the Court concludes that Mr. Spencer did, in fact, believe his bipolar disorder to be serious. Since the evidence shows that Mr. Spencer believed his bipolar disorder to be a serious condition, Plaintiff has failed to rebut the presumption that Mr. Spencer's false answer to Question # 1 on the application for insurance was willful and fraudulent.

■ Lastly, Plaintiff argues that Mr. Spencer had no reason to believe that his bipolar disorder would have disqualified him from insurance coverage. In support of this, she points to her testimony that she was unaware of Mr. Spencer's having made any previous application for life insurance and having been denied because of that condition. Accordingly, Plaintiff argues that Mr. Spencer would not have known that his bipolar condition constituted a basis for denial of coverage, thereby defeating the argument that Mr. Spencer deliberately lied on his application about having been treated for such condition in order to obtain insurance. The problem with this argument, however, as Defendant points out, is that, although Mrs. Spencer may not have been aware of Mr. Spencer's having previously applied for, and been denied, insurance, this does not constitute evidence that Mr. Spencer did not know that his bipolar disorder was material to his application for insurance.[6] Accordingly, this too, fails to rebut the presumption that Mr. Spencer's false answer to Question # 1 was willful and fraudulent.[7]

5. Plaintiff urges that Mr. Spencer's visit to his doctor in January of 2001 was for the purpose of treating a case of the flu, and was unrelated to his bipolar condition. However, regardless of what initially brought Mr. Spencer to his doctor that day, the doctor's notes from that visit plainly demonstrate that Mr. Spencer expressed a need for his Zoloft prescription to be refilled.

6. Plaintiff also elicited testimony at trial from Minnesota Life's own claims examiner, Jennifer Styles Brown, that she (Brown) did not know that bipolar disorder is a nervous disorder, suggesting therefore that, if Ms. Brown had bipolar disorder, she would have answered the question the same way that Mr. Spencer answered it, thereby legitimizing Mr. Spencer's answer. This argument, however, is unpersuasive. *First*, it relies on the theory that Mr. Spencer believed Question # 1 to be limited to medical treatment received for the sorts of ailments specifically mentioned in Question # 2. As explained at *supra* note 2, there is no support for the proposition that Mr. Spencer read Question # 1 in this manner. *Second*, even if there were evidence of such, the hypothetical situation posited by the

argument (i.e., the situation in which Ms. Brown has a medical condition that she does not actually have and is required to answer the same questions posed to the Spencers by the application for insurance herein) requires an unreasonable amount of speculation. Ms. Brown testified that she does not have bipolar disorder, and there is simply no basis for predicting, in the event that she did have such, what she would know (or not know) about her medical condition, and what information she would have provided (or not provided) on an application for insurance. *Third*, the evidence shows that Mr. Spencer did believe his bipolar condition to be serious, regardless of whether Ms. Brown, or anyone else for that matter, believed bipolar disorder to be a serious condition.

7. Plaintiff offered evidence and argument in support of the proposition that Question # 2 on the application was reasonably interpreted by Mr. Spencer not to include a bipolar condition. However, because the Court agrees with Defendant's position with respect to Question # 1 (which inquires as to whether the applicant has consulted a physician or

## CONCLUSIONS OF LAW

1. This Court has jurisdiction based on the parties' diversity of citizenship, pursuant to 28 U.S.C. § 1332.

2. Venue is proper in the Southern District of Ohio, pursuant to 28 U.S.C. § 1391(a), since Plaintiff's claim against Minnesota Life arose in this district and since Plaintiff resides in this district.

3. No response made by a proposed insured on an application for life insurance may bar recovery on that policy unless it is clearly demonstrated that:

 a. the applicant willfully gave a false answer;

 b. such answer was made fraudulently;

 c. but for such answer the policy would not have been issued; and

 d. neither the insurer nor its agent had any knowledge of the falsity of such answer.

4. To bar recovery on an insurance policy, the burden is placed on the insurance company to demonstrate the above elements by clear and convincing evidence.

5. Where an applicant knowingly makes a false statement on an application for insurance regarding prior medical treatment within a specified number of years, the false statement is presumed to be willfully and fraudulently made, and the one claiming under the policy has the burden of going forward with evidence tending to prove (if not the burden of proving) that such consultation was not for or not known by the insured to be for any serious ailment or condition, or that the false answer was an honest mistake.

6. Mr. Spencer knew his answer to Question # 1 to be false because he had consulted a physician numerous times in the three years preceding his application for insurance for the purpose of treating his bipolar disorder.

7. Plaintiff has not come forward with evidence that Mr. Spencer's medical consultation in the three years preceding his application for insurance was not for or known by him to be for any serious ailment or condition.

8. Minnesota Life has demonstrated that, but for Mr. Spencer's false answer to Question # 1, it would not have issued the policy at issue herein.

9. Minnesota Life has demonstrated that it had no knowledge of the falsity of Mr. Spencer's response to Question # 1 prior to a claim being made on the policy.

10. Since Mr. Spencer's false response to Question # 1 was willfully and fraudulently made, Minnesota Life would not have issued the policy but for said false response, and Minnesota Life had no knowledge of the falsity of Mr. Spencer's response to Question # 1 prior to a claim being made on the policy, Minnesota Life is not liable to Plaintiff for the policy's death benefit.

Judgment will be entered in favor of Defendant and against Plaintiff.

The captioned cause is hereby terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

health care provider "for *any* reason"), it need not reach Question # 2.